WESTMINSTER PRESBYTERIAN CHURCH OF WEST TWENTY-
THIRD STREET v. TRUSTEES OF PRESBYTERY OF
NEW YORK.

(Supreme Court, Appellate Division, First Department.　February 17, 1911.)

1. RELIGIOUS SOCIETIES (§ 12*)—ECCLESIASTICAL AUTHORITIES—CONCLUSIVE-
NESS OF DECISION.

The right to membership in a church and congregation of a religious
denomination is an ecclesiastical question relating to the government and
discipline of the church, and the decision of the ecclesiastical authorities
is binding on civil tribunals.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 87–
98; Dec. Dig. § 12.*]

2. RELIGIOUS SOCIETIES (§ 35*)—MEMBERSHIP—ACTION OF ECCLESIASTICAL
AUTHORITIES.

Under Consol. Laws, c. 51, § 69, subd. 2, providing that the office of
trustee of an incorporated church of the Presbyterian faith becomes va-
cant when the trustee ceases to be a member, and under the law of the
Presbyterian Church, authorizing the Presbytery to dissolve a church
and thereby terminate the membership thereof, the dissolution by the
Presbytery of an incorporated church does not dissolve the corpora-
tion as such, but the connection of every member of the congregation is
severed thereby, and the trustees cease to be such, so that nothing re-
mains but the corporation without power by statute or otherwise to act
or to administer its property for the purposes for which it was acquired
and held.

[Ed. Note.—For other cases, see Religious Societies, Dec. Dig. § 35.*]

3. RELIGIOUS SOCIETIES (§ 18*) — MEMBERSHIP — ACTION OF ECCLESIASTICAL
AUTHORITIES.

Where a church of the Presbyterian denomination was dissolved by a
Presbytery, as authorized by the law of the church, the court, in the ab-
sence of evidence that any condition attached to any gift of property
to the church, could assume that the funds to purchase the church edifice
were received by voluntary donations, and that the property had become
dedicated in perpetuity to a religious use.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 111–
129; Dec. Dig. § 18.*]

4. RELIGIOUS SOCIETIES (§ 22*)— MEMBERSHIP — ACTION OF ECCLESIASTICAL
AUTHORITIES.

Where the law does not recognize any denominational control over the
property of a religious corporation, the majority of the members of a
religious corporation may change its creed.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. § 146;
Dec. Dig. § 22.*]

5. RELIGIOUS SOCIETIES (§ 34*)—RELIGIOUS CORPORATIONS—STATUTES.

A religious corporation formed by the consolidation of churches, as
authorized by Laws 1880, c. 167, authorizing the consolidation of Presby-
terian Churches with the consent of the Presbytery, and providing that
the consolidated corporation shall have all the rights and powers and
be subject to all the obligations of religious corporations, under Rev.
Laws 1813, c. 60, and the acts amendatory thereof and supplementary
thereto, is subject to all the provisions of the religious corporation laws
in their then amended and supplemental form.

[Ed. Note.—For other cases, see Religious Societies, Dec. Dig. § 34.*]

6. CORPORATIONS (§ 586*)—CONSOLIDATION—EFFECT.

In the absence of a reservation in the statute under which the consoli-
dation of corporations takes place of the rights of the constituent cor-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

porations, not existing under the law at the time of the consolidation, such rights are lost, and the consolidated corporation and its property, including that coming to it by the consolidation, are subject to the laws then in force, though the constituent corporations are not subject thereto.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2348–2353; Dec. Dig. § 586.*]

**7. RELIGIOUS SOCIETIES (§ 18*)—CONTROL OF CHURCHES—STATUTES.**

The trustees of the Presbytery of New York, incorporated under Laws 1867, c. 206, under a charter creating a body corporate with authority to take, hold, and dispose of property for religious purposes, including property held for the Presbytery, or thereafter acquired by it, etc., is an incorporated governing body within Religious Corporations Law (Consol. Laws, c. 51) § 16, authorizing an incorporated governing body to decide that a church over which it has ecclesiastical jurisdiction has become extinct, and to take possession of the property of such church and manage the same, and the corporation may declare a church extinct and take possession of its property and organize a new church subject to its jurisdiction.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 111–129; Dec. Dig. § 18.*]

**8. RELIGIOUS SOCIETIES (§ 35*)—CONTROL OF CHURCHES—STATUTES.**

Where a Presbytery of the Presbyterian Church for a specified territory dissolves a church over which it has jurisdiction, the trustees and other members of the church may not administer the property of the corporation in defiance of the Presbytery, and the court must accept without question the resolution of the Presbytery dissolving the church as a religious body, and permit the Presbytery to control the property in accordance with the statutes and the laws of the church.

[Ed. Note.—For other cases, see Religious Societies, Dec. Dig. § 35.*]

**9. RELIGIOUS SOCIETIES (§ 18*)—CONTROL OF CHURCHES—STATUTES.**

The court will presume that donors to a church of a religious denomination contributed in the light of the law of the state and of the church, so that the funds donated are subject to such changes in the personnel of those who are to administer the same as the laws of the state and of the denomination authorize.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 111–129; Dec. Dig. § 18.*]

**10. RELIGIOUS SOCIETIES (§ 18*)—CONTROL OF CHURCHES—STATUTES.**

Neither the members of an incorporated church of the Presbyterian denomination nor the trustees thereof have any property right in the property of the corporation dedicated in perpetuity to religious uses; but the property, notwithstanding the dissolution of the corporation in a manner prescribed by the law of the state and of the denomination, will be administered for the same purposes.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 111–129; Dec. Dig. § 18.*]

**11. RELIGIOUS SOCIETIES (§ 2*)—CONTROL OF CHURCHES—STATUTES.**

Religious Corporations Law (Consol. Laws, c. 51) § 16, authorizing the incorporated governing body of a religious denomination to dissolve a church over which it has ecclesiastical jurisdiction, and to take possession of the property of the church and manage the same, is within the power of the Legislature to dissolve corporations and resulting trusts, and provides for the custody and control of property dedicated in perpetuity to religious uses.

[Ed. Note.—For other cases, see Religious Societies, Dec. Dig. § 2.*]

Ingraham, P. J., dissenting.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by the Westminster Presbyterian Church of West Twenty-Third Street against the Trustees of Presbytery of New York. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

See, also, 127 N. Y. Supp. 851.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Henry W. Jessup and Rush Taggart, for appellant.
Charles M. Parsons, for respondent.

LAUGHLIN, J. This is an action in ejectment to recover the possession of lots Nos. 208 to 214, inclusive, on West Twenty-Third street in the borough of Manhattan, New York, having a frontage of 100 feet on said street, commencing 100 feet westerly from Seventh avenue, and extending in depth southerly by parallel lines 118 feet and 9 inches, upon which there is and long has been a church edifice known as the Westminster Presbyterian Church of West Twenty-Third Street, used for religious worship.

The plaintiff was duly incorporated on the 8th day of April, 1889, by the consolidation of the "Associate Reformed Church in Twenty-Fifth Street," with which the Westminster Church organized on the 24th day of March, 1852, had been duly united in October, 1856, and the "West Twenty-Third Street Presbyterian Church," which had been originally organized April 14, 1834, as the "Eighth Avenue Presbyterian Church." The consolidation was authorized by the Supreme Court, pursuant to an agreement made between the two corporations, with the consent and approval of the Presbytery of the Presbyterian Church, on the 3d day of that month. The premises in question were conveyed to the Eighth Avenue Presbyterian Church in its corporate name, and to its successors and assigns, without any express limitation or restriction, by two deeds, dated February 11 and 28, respectively, 1853, and recorded on the 16th day of March of the same year. The name of this church was thereafter and during the same year changed to "West Twenty-Third Street Presbyterian Church," pursuant to the provisions of chapter 323 of the Laws of 1853, and it appears by undisputed evidence that this church held and used the premises for the purposes of public worship until the consolidation, after which time the plaintiff, the consolidated church, held and used the premises for like purposes until the 18th day of March, 1908, when the defendant took forcible possession thereof.

The plaintiff and its predecessors were denominational Presbyterian Churches, subject to the jurisdiction of a Presbytery and of a Synod and of the General Assembly of the Presbyterian Church in the United States. On the 17th day of March, 1908, the Presbytery of the Presbyterian Church for the Boroughs of Manhattan and the Bronx, which was composed of the ministers assigned to the different churches and one ruling elder from each congregation in said territory, and which was vested under the laws of the church with general ecclesiastical authority to discipline the churches within its jurisdiction, was duly in

session, and the minutes of its meeting show the following proceedings and action, viz.:

"The stated clerk reported that he had duly notified the pastor and Session of the Westminster Presbyterian Church of West Twenty-Third Street, of the action of Presbytery taken at its meeting March 3d, with reference to the dissolution of that church. The Moderator's Council presented a supplementary report recommending that the church be at once dissolved. Rev. Harlan G. Mendenhall, pastor, reported that at a corporate meeting of the congregation held last evening forty-seven of those present voted in favor of such dissolution and forty-seven in the negative. Members of the congregation present were then given full opportunity to present their views, and at the request of Presbytery the pastor made a further statement regarding the affairs of that church.

"Presbytery then went into executive session and discussed the report of the Moderator's Council, which, after slight amendment, was unanimously adopted and is as follows:

"The Moderator's Council would respectfully recommend in re Westminster Presbyterian Church of West Twenty-Third Street, the adoption of the following resolutions:

"Resolved that this Presbytery having heard the report of the Moderator's Council concerning the condition of affairs of the Westminster Presbyterian Church of West Twenty-Third Street, New York City, and due notice of the contemplated action by Presbytery having been given from the pulpit of the church on two successive Sabbaths and having heard from said congregation fully in the premises, in view of the conditions prevailing in that church, deem it to be for the best interests of that particular congregation and of the church at large, that said church and congregation be dissolved, and therefore declares that the same be, and hereby is, dissolved, to take effect from this date.

"Resolved that all the sessional records be turned over to the stated clerk of Presbytery and that he be directed to issue to the members of the church letters of dismission to such other churches as said members severally request.

"Resolved that the Trustees of Presbytery be requested and are hereby authorized to take charge of the property belonging to the Westminster Presbyterian Church of West Twenty-Third Street, New York, including balance of deposits in banks and trust companies, and to conserve the same and hold the same subject to the directions of Presbytery, and also with power to audit and pay any outstanding floating indebtedness of said church; and that said trustees be and hereby are authorized to demand and receive all books, papers, records and moneys in possession of all the treasurers of all organizations of said Westminster Presbyterian Church of West Twenty-Third Street, including the Session, the Board of Trustees, the Ladies Aid Society, the Foreign Missionary Society, the Sunday School, the Christian Endeavor Society, and all other funds belonging to said church, including the Christian Endeavor Fund alleged to be in the possession of Walter H. Findlay, and to hold said funds subject to the order of Presbytery; and that said trustees be, and hereby are, authorized to notify the executors of the estate of the late Mary Jane Johnston of the action of Presbytery in dissolving said Westminster Church of West Twenty-Third Street, New York, and to make such arrangements with said executors as will safeguard the interests of said Westminster Church in said estate.

"Resolved that the question of utilizing said church building for religious services in the future and the method of conducting such services be referred to the Presbytery's Committee on Church Extension for consideration and report at the April meeting of said Presbytery, and meanwhile said Committee be requested to continue religious services in the building of the late Westminster Church of West Twenty-Third Street, and that it be empowered to employ the Rev. Harlan D. Mendenhall, D. D., for four weeks to conduct said religious services and to make such arrangements with the Trustees of Presbytery as will enable it to carry out this request until the regular meeting of Presbytery in April."

The defendant is the body referred to in said resolutions as the "Trustees of Presbytery," and it took possession of the church and premises pursuant to said resolutions. Section 8 of chapter 10 of the Form of Government contained in the Presbyterian Digest, being the laws of the church, conferred authority on the Presbytery, among other things:

"To resolve questions of doctrine or discipline seriously and reasonably proposed; to condemn erroneous opinions which injure the purity or peace of the church; to visit particular churches, for the purpose of inquiring into their state, and redressing the evils that may have arisen in them; to unite or divide congregations, at the request of the people, or to form or receive new congregations, and in general to order whatever pertains to the spiritual welfare of the churches under their care."

The action of the Presbytery is subject to review by the Synod, to which an appeal was duly taken from said action of the Presbytery. The Synod confirmed the action of the Presbytery, and a further appeal was duly taken, as authorized by the law of the church, to the Permanent Judicial Commission, which duly heard the appeal and reported its action thereon to the General Assembly of the Presbyterian Church in the United States of America, which duly made the judgment of the Permanent Judicial Commission its judgment in the premises. By the judgment of the General Assembly thus recorded, the action of the Presbytery was fully sustained in every particular. On specific objections it expressly adjudged that the condition of this church "had become such as to jeopardize the interests of religion beyond, as well as within, the bounds of its own parish"; that it was within the power of the Presbytery to dissolve the church; that the elders were duly relieved from the discharge of their duties; that the church was duly dissolved; that the Presbytery did not act arbitrarily, but "with great forbearance"; that "in this case the action of the Presbytery was constitutional, and thereby the dissolution was regularly effected, the church and congregation ceased to exist as an ecclesiastical body, and its elders were necessarily relieved from the discharge of official duties"; that, the church having been duly dissolved, it became the duty of the Presbytery to take charge of and direct the conservation of the church property, "which it could very properly do through the incorporated body styled the 'Trustees of the Presbytery of New York,' as well as to direct said trustees to hold the funds of that church subject to the order of Presbytery as the ecclesiastical judicatory having jurisdiction thereof"; that it was also "within the authority of Presbytery to take charge of and direct such religious services as might thereafter seem advisable to hold in the church building."

After the dissolution of this church, the Presbytery of New York duly organized and enrolled a new Presbyterian Church subject to its jurisdiction under the name of the "West Twenty-Third Street Presbyterian Church of New York City," and recognized the new church "as the successor of the Westminster Church of West Twenty-Third Street." Thereafter the new church was permitted by the Presbytery and by the defendant to use the church building in which to worship and conduct religious services. The authority of the Presby-

tery to thus organize and install the new church as the successor to the dissolved church was also by appeal duly presented to the Permanent Judicial Commission, which specifically adjudicated that, the former church organization having been dissolved, it was both appropriate and lawful for the Presbytery to organize and receive a new congregation within the bounds of the same parish, and to permit it to use the church, and "that the Presbytery acted properly in the premises." This judgment of the Permanent Judicial Commission was likewise duly made the judgment of the General Assembly.

It is conceded that the court has no authority to review the action of the Presbytery in dissolving the church or in organizing the new church; and those and the right to membership in the church and congregation as well being questions of an ecclesiastical nature relating to the government and discipline of the church, it is quite clear that the decision of the constituted authorities of the church is final and is binding on the civil tribunals of justice (Watson v. Jones, 13 Wall. 679, 727, 730, 731, 20 L. Ed. 666; Rector v. Huntington, 82 Hun, 125, 31 N. Y. Supp. 91; Shannon v. Frost, 3 B. Mon. (Ky.) 253; Ferraria v. Vasconcelles, 23 Ill. 456; Baxter v. McDonnell, 155 N. Y. 83, 49 N. E. 667, 40 L. R. A. 670. At the time of the dissolution of the church, it had 229 members in good standing. Of these, 100 applied for and were given letters to the new church organized as successor to the old, and have identified themselves therewith, and 23 were given letters to other churches of the same denomination, and there are 62 whose addresses are unknown, and it appears that from 51 to 104 are in rebellion against the Presbytery and are elsewhere conducting religious worship in the name of the plaintiff and in defiance of the commands of the Presbytery, although employing Presbyterian ministers therefor and following the general doctrine of the church as it existed at the time of the dissolution. According to the law of the Presbyterian Church, on the dissolution of a church, the members cease to be members of the dissolved church, but remain members of the Presbyterian Church of the United States of America and may be transferred to membership in another church organization, as contemplated by the resolution adopted by the Presbytery at the time of the dissolution of this church. Since the dissolution of the plaintiff as a church organization, it has not been on the rolls of the Presbytery as a member thereof, or in any manner recognized thereby. Presbyterian ministers are subject to the rules of the Presbytery, but are not confined to preaching to congregations which are members of the Presbytery or are recognized thereby. Section 4 of chapter 2 of the Form of Government of the Church provides as follows:

"A particular church consists of a number of professing Christians with their offspring, voluntarily associated together for divine worship and godly living, agreeable to the Holy Scriptures and submitting to a certain form of government."

According to the law of this denominational church, no church may withdraw from the Presbytery or unite with another body without the consent of the Presbytery, and its place of worship cannot be changed

without the consent of the Presbytery. The Presbytery alone has power to form, unite, and divide churches, and to establish and dissolve pastoral relationships. Section 1 of chapter 12 of the Form of Government of the Church provides as follows:

"The General Assembly is the highest judicatory of the Presbyterian Church. It shall represent, in one body, all the particular churches of this denomination, and shall bear the title of the General Assembly of the Presbyterian Church in the United States of America."

The radical principles of Presbyterian Church government discipline are: That the several different congregations of believers, taken collectively, constitute one Church of Christ, called emphatically the "Church"; that a larger part of the church, or a representation of it, should govern a smaller, or determine matters of controversy which arise therein; that, in like manner, a representation of the whole should govern and determine in regard to every part and to all the parts united—that is, that a majority shall govern; and, consequently, that appeals may be carried from lower to higher judicatories, till they be finally decided by the collected wisdom and united voice of the whole church. For these principles and this procedure, the example of the apostles and the practice of the primitive church are considered as authority.

No law of the church was read in evidence defining when a church becomes extinct; but chapter 112 of the Laws of the Church provides that, if a church becomes extinct, the Presbytery with which it was connected shall have jurisdiction over its members and shall grant to them letters of dismission to some other church.

On the 5th day of April, 1910, the Presbytery duly adopted preambles reciting in part its action on the 17th day of March, 1908, in dissolving the church and directing the defendant to take possession of the property, and the appeals, and reciting the incorporation of the Presbytery, stated to be the ecclesiastical governing body of the church in the boroughs of Manhattan and the Bronx under the name of the defendant in 1867, the former action with respect to granting letters of dismission to the members of the dissolved congregation, the organization of the new church to worship in the old church building, and that the old church had since its dissolution and for two consecutive years prior to April 5, 1910, "failed to maintain religious services according to the discipline, customs and usages of the Presbyterian Church of the United States of America," and resolutions as follows:

"Therefore, be it resolved that the Trustees of the Presbytery of New York, the incorporated governing body of the Presbytery of New York, an ecclesiastical governing body having jurisdiction over all the Presbyterian Churches connected with the Presbyterian Church of the United States of America, within the boroughs of Manhattan and the Bronx, does hereby decide that the Westminster Presbyterian Church of West Twenty-Third Street, New York, is extinct, and

"Be it further resolved that counsel to the Trustees of the Presbytery be instructed to proceed by all lawful means to obtain a record title to the land, church edifice and other buildings thereon, formerly belonging to the Westminster Presbyterian Church of West Twenty-Third Street, New York, pursuant to the laws of the state of New York in such case made and provided."

By subdivision 2 of section 46 of the religious corporations law, in force March 17, 1908 (chapter 723, Laws 1895, as amended by chapter 97, Laws 1902), now subdivision 2 of section 69 of chapter 51 of the Consolidated Laws, which applied to Presbyterian Churches in connection with the General Assembly of the Presbyterian Church in the United States of America, it was expressly provided as follows:

"If any trustee of an incorporated church to which this article is applicable, declines to act, resigns or dies, or having been a member of such church, ceases to be such member or not having been a member of such church, ceases to be a qualified voter at a corporate meeting thereof, his office shall be vacant and such vacancy may be filled by the remaining trustees until the next annual corporate meeting of such church, at which meeting the vacancy shall be filled for the unexpired term."

Since all the members of the congregation of the dissolved church ceased to be members of the church upon its dissolution, it follows, I think, that the plaintiff as a corporation thereby stood vested with the legal title to the property, but without trustees or corporate members. The corporation as such was not and of course could not be dissolved, by the ecclesiastical authorities of the church. It would seem that the church, by the action of the Presbytery in dissolving it, became extinct as a religious body, for thereby the connection of every member of the congregation was severed as effectually as if it had been by death (see definition "extinct" Century Dictionary and Words and Phrases, vol. 3, p. 2680), and, the trustees having by virtue of the dissolution and of the statute ceased to be such, nothing remained but the naked shell of the corporation without power by statute or otherwise to act or to administer the property for the purposes for which it was acquired and held or otherwise.

The learned counsel for the plaintiff contends that the members of the dissolved congregation had property rights in the real estate in question which it was not within the power of the Presbytery, either as an unincorporated ecclesiastical body or as the defendant, the incorporated body, to affect. I am of opinion that this contention is not sound. It does not appear from what source the funds were obtained with which to purchase this property. It has not been shown, and it is not to be presumed, that there was any condition attached to the gift of the fund or property with which the premises in question were purchased by which the donors retained any reversionary or other interest therein. It may fairly be assumed that the funds to purchase the premises and to build the edifice were received by voluntary donations, bequests, or devises, and that the property has become dedicated in perpetuity to a religious and charitable use.

In Mormon Church v. United States, 136 U. S. 50, 10 Sup. Ct. 792, 34 L. Ed. 478, and 150 U. S. 145, 14 Sup. Ct. 44, 37 L. Ed. 1033, on the dissolution of the Mormon Church by act of Congress it was held that the property of the church, no matter from whom or from what source derived, was irrevocably dedicated to charitable uses, and that under the cy pres doctrine the court would, if Congress failed to properly provide for its administration, administer it through a trustee, if necessary, for a purpose cognate to the use for which

the fund or property was intended, but which was in part, at least, unlawful.

It remains to be seen whether the property in question is now held for a particular religious and charitable use. At the time when the land was purchased, and probably when the church was erected, although the date of that is not given, the religious corporations law of the state did not recognize any denominational control over the property of a religious corporation, and the majority of the members of the corporation, being the congregation, could lawfully change the creed and religious doctrine to be expounded from the pulpit from one denomination to another. Chapter 60, §§ 3, 4, 2 Rev. Laws 1813; Robertson v. Bullions et al., 11 N. Y. 243; Petty et al. v. Tooker et al., 21 N. Y. 267; Gram v. Prussia Society, 36 N. Y. 161; Watkins v. Wilcox, 66 N. Y. 654.

If, therefore, title to this property still remained in the original church, a serious question would be presented as to whether it was competent for the Legislature by subsequent legislation to affect the control of the majority of the members of the corporation over its property; but we are relieved from deciding that question, for the reason that the members of the church corporation which united to form the plaintiff as the consolidated church waived any property rights they may have had, which were not preserved to them by the statute under which the new corporation was formed, by the consolidation with their consent. Prior to that time the Legislature had amended the statutes so as to recognize denominational control to a considerable extent, and with respect to consolidation it was expressly provided, in section 3 of chapter 176, of Laws 1876, as amended by chapter 167 of the Laws of 1880, in force when this consolidation was effected, that in the case of Presbyterian Churches the consent of the Presbytery was essential to the validity of the union or consolidation, and it was further expressly provided that, on the making and entering of an order of the Supreme Court for the union and consolidation of the churches, the corporations should be united and consolidated into one corporation, by the name designated in the order, which "shall have all the rights and powers, and be subject to all the obligations of religious corporations under the act (chapter 60, Rev. Laws 1813) to which this is supplementary, and the acts amendatory thereof and supplementary thereto."

At the time of the consolidation, not only were the two churches, which were consolidated, under the ecclesiastical jurisdiction of the Presbytery, but the defendant had made a loan of $22,000 to the West Twenty-Third Street Presbyterian Church and had taken an ecclesiastical mortgage on this property to secure the repayment thereof, which by its express terms was not enforceable until "after the severance, if ever, of the ecclesiastical connection" of said West Twenty-Third Street Presbyterian Church with the Presbytery of New York. This mortgage drew no interest, and it was provided by the consolidation agreements that a similar new mortgage should be executed by the consolidated churches, and this was done on the 5th day of July, 1889. The petition of each church upon which the consolidation was authorized by the court set forth that the "peti-

tioner is connected with the Presbytery of New York and is subject to its advice and control; that it has submitted the question as to the advisability of said union and consolidation to the judgment of the Presbytery of New York, and the result has been that said Presbytery has adopted a resolution" in substance approving said union and consolidation. This ecclesiastical mortgage was paid from the proceeds of a loan of $60,000, obtained by the plaintiff by a mortgage on the church property with the consent of the defendant in the year 1907, and it has no material bearing on the case except as it shows the relations existing between the two corporations, and it disproves the contention that neither the plaintiff nor its predecessors obtained any financial aid or assistance from the defendant. The recital in the ecclesiastical mortgage which admitted the possibility of the severance of the relations between the plaintiff and the Presbytery is of no particular significance, and doubtless had its origin at a time when under the laws of this state such an event might have taken place. It is quite plain, I think, from the phraseology of the statute, that the new corporation became subject to all of the provisions of the religious corporation laws in their then amended and supplemental form; but, if this did not clearly appear, the general rule is that, in the absence of a reservation in the statute, under which the consolidation takes place, of the rights of the constituent corporations, which would not exist under the law at the time of the consolidation, they are lost, and the consolidated corporation and its property, including that which came to it by the consolidation, becomes subject to the laws then in force, although the constituent corporations would not have been subject thereto. Shields v. Chic., 95 U. S. 319, 24 L. Ed. 357; Railroad Co. v. Georgia, 98 U. S. 359, 25 L. Ed. 185.

At the time of the consolidation, the Legislature, by acts amendatory of and supplementary to chapter 60 of the Revised Laws of 1813, recognized that various religious denominations existed and had enacted statutes with particular application to the respective denominational churches, and these statutes show a legislative intent that the property of a denominational church can only be administered by the trustees, who are the legal custodians thereof, for the purposes of the church in accordance with the rules, laws, and discipline of the governing body of the particular denominational church. The first of these statutes conferring this denominational control was chapter 79 of the Laws of 1875, which was an act supplementary to the act of 1813. By section 4 of that act it was provided that:

"The trustees of any church, congregation or religious society, incorporated" under section 2 of said act "shall administer the temporalities thereof, and hold and apply the estate and property belonging thereto, and the revenues of the same, for the benefit of such corporation, according to the discipline, rules and usages of the denomination to which the church members of the corporation belong; and it shall not be lawful for the trustees to divert such estate, property, or revenues, to any other purpose, except toward the support and maintenance of any religious, benevolent or other institution connected with such church, congregation or religious society."

Section 6 of the act extends the jurisdiction of the courts of equity of the state over such corporations "so far as may be neces-

sary to enforce the provisions of this act." Said section 4 of chapter 79 of the Laws of 1875 became, without material change, section 5 of the religious corporations law, as originally enacted (chapter 723, Laws 1895), and in an amended form has found its way into section 5 of the present religious corporations law (chapter 51, Consol. Laws), and, in so far as it has particular application to the constituent churches of the Presbyterian Churches in the United States of America, into subdivision 3 of section 69 of the present religious corporations law, which is as follows:

"The trustees of an incorporated church to which this article is applicable shall have the custody and control of all the temporalities and property belonging to the corporation and of the revenues from such property, and shall administer the same in accordance with the discipline, rules, usages, laws and book of government of the religious denomination or ecclesiastical governing body with which the church is connected, and with the provisions of law relating thereto, for the support and maintenance of the church corporation or providing the members thereof at a corporate meeting thereof shall so authorize, of some religious, charitable, benevolent or educational object, conducted by such church, or connected with it, or with the denomination with which it is connected, and they shall not use such property or revenue for any other purpose or divert the same from such uses."

Subdivision 4 of said section 69 of the present religious corporations law authorizes the members of an incorporated Presbyterian Church, at a corporate meeting, to adopt by-laws, or give directions which "shall control the subsequent action of the trustees, as to the temporalities and property or revenues therefrom, and as to the care thereof, and changes in either thereof and disposition thereof." The radical change in the policy of the state in giving to religious denominations denominational control over the constituent churches is manifested in numerous provisions of the religious corporations law: By section 63, which provides for the incorporation of unincorporated Presbyterian Churches of this denomination. By subdivision 1, the meeting of the congregation for that purpose may only be called by members "in good and regular standing of such church by admission into full communion or membership therewith, in accordance with the rules and regulations of such church, and of the governing ecclesiastical body of the denomination or order, to which the church belongs." By subdivision 2, only those possessed of these qualifications may vote, and the question is to be determined by their majority vote; and the same qualifications of voters at corporate meetings are prescribed by section 66. By section 61 it is provided that all meetings affecting "the pastoral relation," or the salary of a minister or pastor of a church of this denomination, except the increase of a salary at a corporate meeting of the church, shall be "called, conducted, and controlled, only in accordance with the laws, regulations, practice, discipline, books of government, rules and usages of the ecclesiastical governing body of such church and of the Presbyterian Church in the United States of America." Section 62 requires that "the fixing or changing of the times, nature or order of public or social or other worship" of such denominational church be "in the manner and by the authority provided in the laws, regulations, practice, discipline, rules and usages of the Presbyterian religious de-

nomination or ecclesiastical governing body, with which such church is connected."

It appears that the Session is a spiritual body of each church congregation composed of the pastor and elders possessing, subject to the Presbytery, the authority to which reference is made in this section. The statute also, in providing for the use, control, and ownership of the property of an extinct denominational church, follows closely the law of the Presbyterian Church in the United States of America, to which reference has been made. Section 15 of the religious corporations law provides as follows:

"An unincorporated diocesan convention, presbytery, classis, synod, annual conference, or other ecclesiastical governing body having jurisdiction over several churches, may at a stated meeting thereof, determine to become incorporated by a designated name, and may, by a plurality vote, elect not less than three nor more than nine persons to be the first trustees of such corporation. The presiding officer and clerk of such governing body shall execute and acknowledge a certificate stating that such proceedings were duly taken as herein provided, the name by which such corporation is to be known, and the names of such first trustees. On filing such certificate the members of such governing body and their successors shall be a corporation by the name stated in the certificate, and the persons named as trustees therein shall be the first trustees thereof. The trustees of every incorporated governing body and their successors shall hold their office during the pleasure of such body, which may remove them and fill vacancies in accordance with its rules and regulations. Such corporation may take, administer and dispose of property for the benefit of such governing body, or of any parish, congregation, society, church, mission, religious, benevolent, charitable or educational institution existing or acting under it."

Section 16 of the religious corporations law, as amended by chapter 185, Laws 1910, so far as material to the questions involved on this appeal, provides as follows:

"Such incorporated governing body may decide that a church parish or society in connection with it or over which it has ecclesiastical jurisdiction, has become extinct, if it has failed for two consecutive years next prior thereto, to maintain religious services according to the discipline, customs and usages of such governing body, or has had less than thirteen resident attending members paying annual pew rent, or making annual contribution toward its support * * * and may take possession of the temporalities and property belonging to such church, parish or religious society, and manage the same; or may, in pursuance of the provisions of law relating to the disposition of real property by religious corporations, sell or dispose of the same and apply the proceeds thereof to any of the purposes to which the property of such governing religious body is devoted, and it shall not divert such property to any other object. And for the purpose of obtaining a record title to the land and the church edifice, or other buildings thereon, by such incorporated governing body, the surviving trustee or trustees of said extinct church, or if there be no surviving trustee then a surviving member of said extinct church, may, without a consideration being paid therefor by such incorporated governing body, convey to it said land and church edifice, or other buildings thereon, subject, however, to an order of the Supreme or County Court based upon a petition reciting that said church has become extinct: the names of its surviving trustee or trustees, and the names of its members, who must have given their consent to the making of said conveyance. Upon the recital of said facts in said petition the court shall have jurisdiction to grant an order allowing said conveyance to be made without a consideration: and should there be no surviving members, as well as no surviving trustee of said extinct church, said petition may be made by an officer of such incorporated governing body, in which event the court, upon a recital of said fact, shall have jurisdiction to appoint a suitable person as trustee for the purpose

of making said conveyance. Where a proceeding is instituted under this sec-
tion for the sale of the real property of an extinct religious corporation, a
compliance with subdivisions four, five, seven, eight and nine of section sev-
enty-one of 'An act relating to corporations generally, constituting chapter
twenty-three of the Consolidated Laws,' shall be unnecessary, and such pro-
ceedings shall be in all respects valid without a compliance with said sub-
divisions."

The defendant in adopting the preambles and resolutions on the
5th day of April, 1910, assumed to act pursuant to the provisions of
section 16 of the religious corporations law herein quoted. Doubtless,
in order to remove any doubt there might be as to whether this au-
thority was lodged in the defendant, or in the Presbytery as an unin-
corporated body, the Presbytery on the 11th day of the same month
formally ratified and approved the action of the defendant. The
learned counsel for the appellants contend that the defendant is the
incorporated governing body of this church within the contempla-
tion of section 16 of the religious corporations law. Although it was
not incorporated under the provisions of section 15 of the religious
corporations law, but by a special act of the Legislature (chapter
206, Laws 1867), I am of opinion that this contention should be
sustained. If the charter of the defendant be construed literally, it
only incorporates the trustees designated therein and their successors
who were to be appointed from time to time by the Presbytery. Sec-
tion 1 of the charter provides as follows:

"The Presbytery of New York (of which the Reverend John M. Krebs is
stated clerk), in connection with the General Assembly of the Presbyterian
Church in the United States of America, having designated from its member-
ship the following persons, to wit, John M. Krebs, Nathan L. Rice, James O.
Murray, William M. Paxton, Alfred H. Kellogg, Aaron B. Belknap, Daniel
Lord, William Walker, Charles Harmer and David N. Lord, citizens of the
United States, to be trustees in this behalf, the said persons and their suc-
cessors, to be from time to time appointed by said Presbytery, are hereby cre-
ated a body politic and corporate by the name of the 'Trustees of the Pres-
bytery of New York.'"

Thus the Presbytery originally designated the trustees and was
thenceforward to designate their successors at will. The second sec-
tion of the charter authorized the corporation to take, hold, and dis-
pose of property for religious and charitable purposes, including the
real and personal estate then held for the Presbytery or thereafter
acquired by it, and conferred the right to take by gift, devise, and
bequest, with a limitation that the yearly income should not exceed
$10,000. The third section provides that the management and dis-
posal of the affairs of the corporation shall be in the hands of the
trustees and their successors. And the fourth section gives the cor-
poration the general powers conferred on corporations by chapter
18, tit. 3, part 1, of the Revised Statutes, so far as applicable, and
subjects it to the provisions of chapter 360 of the Laws of 1860 with
respect to limiting devises. It is quite clear that the Presbytery is
the ecclesiastical governing body which has immediate jurisdiction
over the churches within its territory.

After the Presbytery of New York took the lead by becoming
incorporated by said act in 1867, the Legislature in 1875 by chapter

381 authorized any Presbytery to become incorporated, and by chapter 177 of the Laws of 1877 it provided that, whenever any church in connection with a Presbytery became extinct by reason of the death or removal of its members, it should be lawful for the incorporated Presbytery to take possession of the temporalities of the extinct church and manage or dispose of the same and apply the proceeds as therein provided, and that the Presbytery to which the church belongs should determine when any church was extinct, provided that no church having more than nine resident members should be declared extinct unless it failed for three consecutive years to maintain the stated preaching of the gospel. These are the statutes in which said sections 15 and 16 of the religious corporations law had their origin.

I am of opinion, therefore, that the act in effect (see Robertson v. Bullions, supra), although not strictly in form, incorporated the Presbytery as a body but in the name of the trustees, and that it has the same authority to declare a church extinct as if it has been incorporated pursuant to the provisions of section 15 of the religious corporations law quoted, which, as has been seen, is phrased somewhat differently. The defendant is within the spirit, although not within the letter, of said section 16.

If section 16 of the religious corporations law be applicable to the facts presented by this record and be constitutional, then it is quite clear that the Legislature, in the exercise of its jurisdiction over religious corporations and property dedicated to religious and charitable uses, has directed that in these circumstances the defendant should be entitled to the possession of the church property. It is, however, contended on the part of the plaintiff that the statute is not in point, for the reason that it was never intended to apply to a case where the Presbytery sets the two years' statute running by its own action in dissolving the church, and that, if the statute be deemed applicable, it is unconstitutional. We must accept without questioning the resolution of the Presbytery dissolving the church as a religious body. Thereafter the trustees and other rebellious members of the congregation could not administer the property of the corporation "in accordance with the discipline, rules, usages, laws and book of government" of the church, for they instantly ceased to be such trustees and members respectively, and it was their duty to accept letters of dismission and to become communicants of some other congregation of the same denomination. The members of this church, who in disobedience to the lawful direction of the Presbytery refused to accept letters of dismission, cannot successfully maintain that they are still members of the dissolved corporation and entitled to administer its property, when they are in rebellion against the constituted authority of the church to which they as Presbyterians owe allegiance.

No weight can be given to the argument that if, by dissolving a church, the Presbytery can succeed to the administration and possession of its property, there is danger that the intention of the donors of the fund with which the property has been acquired will be thwarted. Ordinarily such donors are members of the religious de-

127 N.Y.S.—54

nomination to which the constituent church is subject, and they are presumed to have contributed in the light not only of the law of the state but also of the church. The money or funds donated become subject to such change in the personnel of those who are to administer the property and in the name of the administrator thereof as the laws of the state and of the denominational church authorize. The law of the church, which is not in derogation of any law of the state contemplated that proper church discipline might require the dissolution of a particular church congregation and the administration of its property for the same purposes by another body or organization. On the consolidation of the churches, the property became dedicated in perpetuity to the religious and charitable uses prescribed by the statute (Mormon Church v. United States, supra), and on the lawful dissolution of the church congregation the church corporation is left without members or trustees. Under the laws of the church, the Presbytery then succeeded to the powers of the Session, which had authority to direct the trustees in the use of the property for religious worship. It may be that the church laws should not receive such recognition that in and of themselves they may be held to give the trustees of the Presbytery the administration of the property; but they point out the only course by which the property can be effectually administered for the purposes and as authorized by the statute, and therefore that course should be adopted by the Supreme Court in directing the administration of the property in fulfillment of its duty as the successor of the Court of Chancery charged with the administration of property dedicated to religious and charitable uses which is without a trustee to administer it. Mormon Church v. U. S., supra; Watson v. Jones, supra, at page 731 of 13 Wall., 20 L. Ed. 666; Isham v. Trustees, etc., 63 How. Prac. 465, 14 Abb. N. C. 363; First Ref. Ch. v. Bowdon, 10 Abb. N. C. 1, 14 Abb. N. C. 356; Matter of Cong. Ch. v. Union Village, 6 Abb. N. C. 398. See, also, section 18, Religious Corporations Law. It becomes necessary to change the administrator, but not the administration of the property.

Moreover, I am of opinion that the statute is directly in point and entitled the defendant to the possession of the property. There is no real question with respect to its constitutionality. Neither the members of the congregation nor the trustees had any property right in the property of the corporation dedicated in perpetuity to religious and charitable uses. Watson v. Jones, 13 Wall. 679, 726, 20 L. Ed. 666; Mormon Church v. U. S., supra. The property will still be held to be administered for the same purposes, and it cannot be sold without the consent of the court. It was competent, I think, for the Legislature to enact these statutes directing with respect to the custodian of this property in the event specified in the statute. The authority of the Legislature with respect to dissolving corporations and regulating trusts, and particularly the custody and control of property dedicated in perpetuity to religious and charitable uses, is quite extensive. Mormon Church v. U. S., supra. Legislation vesting an incorporated church with the property of an unincorporated church, although the incorporation was authorized by a majority vote

of the members of the congregation and was against the protest of the minority, has been sustained. Sections 3, 4, c. 60, Rev. Laws 1813; sections 4, 63, Religious Corporations Law; Reformed Church, v. Veeder, 4 Wend. 494; Church of Redemption v. Grace Church, 68 N. Y. 570; Trustees v. Bly, 73 N. Y. 323. See, also, Metcalf v. Union Trust Co., 181 N. Y. 39, 54, 73 N. E. 498, and cases cited in opinion of Cullen, C. J.

No question with respect to the rights of creditors is presented for decision on this appeal. The defendant evidently has assumed and paid, or intends' to pay, the obligations of the plaintiff corporation, and, if it should not, the rights of creditors, if any, will not be prejudiced by our decision herein. The Legislature has not provided for a formal dissolution of the old corporation in such circumstances (see section 18, Religious Corporations Law), but in so far as it is competent for the Legislature to dissolve corporations and regulate trusts, and particularly the administration of property dedicated in perpetuity to ·religious and charitable uses, it is within its discretion as to how it will exercise its authority. See Mormon Church v. U. S., supra; People v. O'Brien, 111 N. Y. 1, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684; Metcalf v. Union Trust Co., 181 N. Y. 39, 73 N. E. 498, opinions of Gray, J., and Cullen, C. J., and authorities cited; Greenwood v. Light Co., 105 U. S. 13, 26 L. Ed. 961.

I am of opinion, therefore, that, the defendant being in possession of the property, the court should leave it in possession, even if the statute did not apply; and I am further of opinion that the statute does apply and gives the defendant the absolute right to possession; and either view defeats the plaintiff's right to maintain this action. It may be observed further that it is difficult to see upon what theory this action is authorized, since the plaintiff is without trustees.

It follows, therefore, that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event.

McLAUGHLIN, MILLER, and DOWLING, JJ., concur. IN-GRAHAM, P. J., dissents.